UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Paul C. Drueke
1630 Foot Hills Trail NE
Ada, Michigan 49301, and

Mary Jo Drueke,
1630 Foot Hills Trail NE
Ada, Michigan 49301,

       Plaintiffs,

      v.                                Case No. _____

Andrew L. Bass
26600 George Zeiger Dr. Apt. 408
Beachwood, OH  44122,

Christopher D. Bering
1823 N. Davies Dr.
Oconomowoc, WI  53066, and

Jeffrey P. Cowie,
W55 N854 Cedar Ridge Dr.
Cedarburg, WI  53012,

       Defendants,

    - and -

FirsTime Design Limited
c/o Julie Kren
2350 S. 170th St.
New Berlin, WI  53151,

       Nominal Defendant.

---

**COMPLAINT**

---

Plaintiffs Paul Drueke and Mary Drueke state the following for their Complaint against Defendants Andrew Bass, Christopher Bering, and Jeffrey Cowie and Nominal Defendant FirsTime Design Limited:

## PLAINTIFFS, DEFENDANTS, AND NOMINAL DEFENDANT

1.     Plaintiff Paul C. Drueke is a natural person.  He is domiciled in the State of Michigan and resides at 1630 Foot Hills Trail NE, Ada, Michigan 49301.

2.     Plaintiff Mary Jo Drueke also is a natural person who is domiciled in the State of Michigan and resides at 1630 Foot Hills Trail NE, Ada, Michigan.

3.     Mr. and Mrs. Drueke own or beneficially own in excess of 172,000 shares of common stock of Nominal Defendant FirsTime Design Limited.

4.     Defendant Andrew L. Bass is a natural person.  On information and belief, he is domiciled in the State of Ohio and resides at 26600 George Zeiger Dr. Apt. 408, Beachwood, Ohio 44122.

5.     Defendant Christopher D. Bering is a natural person.  On information and belief, he is domiciled in the State of Wisconsin and resides at 1823 N. Davies Drive, Oconomowoc, Wisconsin 53066.

6.     Defendant Jeffrey P. Cowie is a natural person.  On information and belief, he is domiciled in the State of Wisconsin and resides at W55 N854 Cedar Ridge Dr. Cedarburg, Wisconsin 53012.

7.     Mr. Bass, Mr. Bering, and Mr. Cowie all are members of the Board of Directors of Nominal Defendant FirsTime Design Limited.  Mr. Bass has been a member of the Board since 2011.  Mr. Bering and Mr. Cowie have been members since 2013.

QB\132077.00003\46880144.3

8.      Nominal Defendant FirsTime Design Limited is a business corporation organized under Chapter 180 of the Wisconsin Statutes.  Its principal official is located at 2350 S. 170th Street, New Berlin, Wisconsin 53151.  Its registered agent is Julie Kren, 2350 S. 170th Street, New Berlin, Wisconsin 53151.

## JURISDICTION AND VENUE

9.      Plaintiffs Paul and Mary Jo Drueke are citizens of Michigan because they are domiciled in the State of Michigan.

10.     Defendant Andrew Bass is a citizen of Ohio because he is domiciled in the State of Ohio.

11.     Mr. Bass is subject to personal jurisdiction in the State of Wisconsin because Plaintiffs' claims against him arise from his conduct as a director of FirsTime Design Limited, which is a Wisconsin corporation.

12.     Defendants Christopher Bering and Jeffrey Cowie are citizens of Wisconsin because they are domiciled in the State of Wisconsin.

13.     Nominal Defendant FirsTime Design Limited is a citizen of Wisconsin because it is a Wisconsin corporation with its principal place of business in Wisconsin.

14.     Plaintiffs seek, among other relief, a judgment exceeding $75,000 against each of the individual Defendants.

15.     The district courts of the United States have original jurisdiction over this civil action under 28 U.S.C. § 1332(a)(1).

16.     Under 28 U.S.C. § 1391(b)(2), venue is proper in the United States District Court for the Eastern District of Wisconsin because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Waukesha County, Wisconsin.

QB\132077.00003\46880144.3

17.     In the alternative, venue is proper in the United States District Court for the Eastern District of Wisconsin under 28 U.S.C. § 1391(a)(3) because each Defendant is subject to this Court's personal jurisdiction with respect to this action.

## FACTS

**I.      Ten Years Ago Paul Drueke Led a Successful Shareholder Effort to Help FirsTime Recover From Near Bankruptcy and Achieve Significant Growth by Restructuring the Company and Changing the Directors and Management.**

18.     Plaintiff Paul Drueke has been a shareholder of FirsTime Design Limited ("FirsTime," or "the Company") since 2005.

19.     Beginning in 2007, Mr. Drueke led a successful shareholder movement to replace FirsTime's former directors and restructure the Company's operations.

20.     At that time, FirsTime was called "The Middleton Doll Company" and was publicly traded on the NASDAQ securities exchange.

21.     In August 2007, Mr. Drueke sent a letter to The Middleton Doll Company's President and CEO, criticizing management's performance and announcing his intent to challenge the existing directors' control of the Board.  Mr. Drueke also publicly filed a copy of his letter with the United States Securities Exchange Commission, making it available to the Company's shareholders.

22.     In his August 2007 letter, Mr. Drueke demanded that the Company form a shareholders' committee to evaluate and recommend to the Board and the shareholders alternatives that could enhance shareholder value.  He further demanded that two members of the Board of Directors resign, and that all Board members waive their right to receive any compensation until the Company became profitable.

-4-

23. Thereafter, Mr. Drueke led a group of shareholders—collectively holding a majority of the Company's stock—who in fact succeeded in replacing the Company's former directors and ultimately restructuring the Company.

24. Between 2007 and 2011, due to the efforts led by Mr. Drueke, The Middleton Doll Company changed its name to FirsTime Design Limited, saw all its former directors replaced by new directors supported by Mr. Drueke and other shareholders allied with him, took its shares off NASDAQ, and began a period of restructuring.

25. The changes spearheaded by Mr. Drueke led to substantial improvement in FirsTime's performance, beginning in 2011 and continuing into 2016. FirsTime went from suffering nearly $1 million of losses in 2010 to achieving profits each year from 2012 through 2016.

II. **After Mr. Drueke Sought Further Changes at FirsTime in 2016, Defendants Reacted by Trying to Buy Out Mr. Drueke and Other Shareholders Who Posed a Threat to Defendants' Control of the Board.**

26. At the time of the annual shareholders meeting in June 2016, FirsTime's Board of Directors had four members. Three of them were Defendants: Andrew Bass, Christopher Bering, and Jeffrey Cowie. The fourth was a non-party, Peter Wierenga.

27. As of 2016, Mr. Wierenga, the longest-serving Board member, was Chairman of the Board. Defendant Christopher Bering served (and still serves) as FirsTime's Chief Executive Officer, in addition to being a member of the Board.

28. At the time of the 2016 annual shareholder meeting Mr. Drueke raised certain concerns with the Board. Those concerns included the fact that the Company had income of over $1 million in 2015 and had over $3 million in cash, yet was not paying any dividends to shareholders. Mr. Drueke was also concerned because one of the Board members, Defendant Jeffrey Cowie, had refused to buy any shares of FirsTime's stock. Chairman of the Board Peter

-5-

Wierenga expressed support for Mr. Drueke's concerns, but the remaining board members did not.

29. During FirsTime's annual shareholders meeting in June 2016, Mr. Drueke informed the Board and the other attending shareholders that, because of the concerns he had regarding the Company, he was considering running a slate of alternative director candidates in the future.

30. Shortly after the 2016 annual shareholders meeting the Board agreed to a small, one-time special dividend of $0.15 per share. This was a much smaller dividend that had been suggested by Mr. Drueke.

31. Thus, by June 2016, at the latest, Defendants understood that Mr. Drueke was concerned about some of the decisions made by the Defendants and was contemplating raising a challenge to their control of FirsTime's Board.

32. Defendants also understood that Mr. Drueke had mounted a similar challenge earlier in FirsTime's history—and that in that instance, Mr. Drueke had successfully dislodged a slate of FirsTime's former directors.

33. Defendants also knew that a new challenge from Mr. Drueke likely would garner significant support from other FirsTime shareholders who shared Mr. Drueke's concerns.

34. Because they understood the genuine threat Mr. Drueke posed to their control of the Board, Defendants first sought to buy him out.

35. Mr. Bass and Mr. Bering each approached Mr. Drueke multiple times in 2015 and 2016 to express their interest in buying him out of FirsTime. Defendant Bass also suggested to Mr. Drueke that perhaps FirsTime stock was not the right type of stock for Mr. Drueke to own and that he should sell his stock. Mr. Drueke responded to these attempts by telling Mr. Bass

QB\132077.00003\46880144.3

and Mr. Bering that any buyout would also have to include shareholders who Mr. Drueke had introduced to FirsTime.

36.     In or around November 2016, Mr. Bering initiated discussions about the possibility that FirsTime would buy out a large group of shareholders including, but not limited to, Paul and Mary Jo Drueke.

37.     In December 2016, Mr. Bering informed Mr. Drueke that the buyout transaction Mr. Bering had been hoping to orchestrate had proved to be infeasible.

38.     During that same call, however, Mr. Bering reiterated that the Board still hoped to find opportunities to buy out individual shareholders who were dissatisfied with their management.  Mr. Bering asked Mr. Drueke to have any such shareholders contact him if they were willing to sell their shares.

**III.    Having Failed to Buy Out Mr. Drueke and His Allies, Defendants Secretly Amend FirsTime's Bylaws in Order to Hamper the Impending Challenge from Mr. Drueke.**

39.     When their attempt to buy out the shareholders opposing them failed, Defendants turned to other measures to entrench their control of FirsTime's Board of Directors.

40.     In late 2016, Mr. Bering called a special meeting of the Board of the Directors for the purpose (among others) of adopting a new set of bylaws.

41.     The new proposed bylaws contained provisions that were not intended to serve any legitimate business purpose but were designed by the Defendants to constrain Mr. Drueke's ability to mount a successful challenge to their control of the Board.

42.     First, the new proposed bylaws included provisions (Sections 2.1(b) and 3.2(a)) that restricted shareholders' rights to nominate candidates for the annual Board elections by requiring shareholders to submit all nomination materials for candidates proposed by them nearly four months in advance of FirsTime's annual shareholders meetings.

QB\132077.00003\46880144.3

43.     Second, the new proposed bylaws included provisions making it harder for shareholders such as Mr. Drueke to call a special shareholders meeting at which FirsTime's shareholders could vote on removing or replacing members of the Board.

44.     Under Wisconsin law, a corporation must hold a special shareholders meeting if "[t]he holders of at least 10 percent of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting sign, date and deliver to the corporation one or more written demands for the meeting describing one or more purposes for which it is to be held." Wis. Stat. § 180.0702(1)(b).

45.      The new proposed bylaws, however, contained a provision that barred shareholders from demanding a special shareholders meeting unless, as a prerequisite, they first asked the Board to fix a "Demand Record Date."  Under the new proposed bylaws, no demand for a special shareholders meeting would be entertained until the "Demand Record Date" had been fixed.

46.     Further, the new proposed bylaws contained a separate provision permitting the Board *not* to call a special shareholders meeting—even after it received a demand in compliance with Wis. Stat. § 180.0702(1)(b)—unless each and every "Soliciting Shareholder" (a term defined in the bylaws themselves) agreed in writing to pay all costs associated with the meeting unless they prevailed in each and every matter voted upon during the meeting.

47.     This provision also permitted the Board, by majority vote, to require certain "Affiliates" of "Soliciting Shareholders" to sign the same agreement too, before the Board would call any special meeting in response to a shareholder demand.

48.     Finally, the new proposed bylaws included a "majority voting" provision for director elections that is unlawful.

QB\132077.00003\46880144.3

49.     By statute, "[u]nless otherwise provided in the articles of incorporation, directors are elected by a *plurality* of the votes cast by the shares entitled to vote in the election at which a quorum is present."  Wis. Stat. § 180.0728(1) (emphasis added).

50.     The statute's "plurality voting" rule has never been modified by FirsTime's articles of incorporation.  Amending FirsTime's articles to modify the "plurality voting" rule would require a vote of FirsTime's shareholders.

51.     Nevertheless, the bylaws proposed to the Board in December 2016 contained a provision stating that, except when the number of candidates exceeded the number of seats, FirsTime's directors would be elected by "a *majority* of the votes cast at any meeting of the shareholders for the election of directors at which a quorum is present . . ." (emphasis added).

52.     On information and belief, these new bylaws were adopted by the Board on December 21, 2016.

53.     FirsTime's shareholders received no notice that these new bylaws had been adopted.

54.     Nor did FirsTime's shareholders otherwise receive notice that—under the newly adopted bylaws—they now faced an impending deadline to nominate candidates for election to the Board at FirsTime's next annual shareholders meeting.

**IV.     Defendants Prevent Mr. Drueke From Running Alternate Candidates for Election to the Board, Unlawfully Deny the Druekes' Statutory Right to Inspect FirsTime's Corporate Records, and Disseminate False Information to Deter Other Shareholders from Supporting Mr. Drueke's Challenge to Their Control of the Board.**

55.     On May 8, 2017, the Board notified the shareholders that FirsTime's annual shareholders meeting would occur on June 20.

-9-

56.     Shortly thereafter, Mr. Drueke called Mr. Bering. Mr. Drueke stated that overall he thought Mr. Bering was doing a good job running FirsTime, but that he remained concerned that Mr. Cowie remained on the Board even though he continued to refuse to buy stock.

57.     Mr. Drueke also expressed concern about a recent decision to not invite Board Chairman Wierenga to a meeting of the Asset Allocation Committee, of which he was a member, and to instead have a consultant (Dale Thomas), in whom Mr. Drueke expressed little confidence, attend.

58.     In that conversation Mr. Drueke also told Mr. Bering that he was again contemplating nominating an alternate slate of directors to be voted on by the shareholders at the annual meeting. At the time, Mr. Drueke was not aware of the new bylaw provision which the Board had secretly adopted in December. Under this bylaw provision, the deadline for shareholders to nominate candidates for election to the Board had passed weeks before the notice for the annual meeting had even been sent to shareholders.

59.     Mr. Bering did not inform Mr. Drueke of the secret bylaw in their conversation.

60.     Therefore, in preparation for nominating an alternate slate of directors, on May 17, 2017, the Druekes served FirsTime with a statutory demand to inspect FirsTime's bylaws, shareholders list, and limited other records. Specifically, the Druekes sought to inspect:

- FirsTime's bylaws, as permitted by Wis. Stat. § 180.1602(1m);

- FirsTime's shareholders list, as permitted by Wis. Stat. § 180.0720(2) and § 180.1602(2)(a)3.; and

- The minutes of Board or Board committee meetings that addressed specific topics, as permitted by Wis. Stat. § 180.1602(2)(a)1.

61.     Through an attorney, Defendants caused FirsTime to respond that FirsTime would provide copies of FirsTime's bylaws and shareholders list, as well as excerpts from the minutes

of certain Board or Board committee meetings. However, the Druekes were told that FirsTime would make these materials available only if the Druekes first delivered "a bank check in the amount of $5,000."

62.     This demand for $5,000—as the price for accessing basic corporate records—was exorbitant and unlawful. By statute, a corporation "may impose a reasonable charge, covering the costs of labor and material, for copies of any documents provided to [a] shareholder," but never a charge "exceed[ing] the estimated cost of production or reproduction of the records." Wis. Stat. § 180.1603(2). The cost of producing, or reproducing, the limited set of documents that FirsTime agreed to make available to the Druekes did not plausibly approach $5,000.

63.     The unlawful demand for $5,000 was made at Defendants' direction, for the purpose of deterring the Druekes from exercising their statutory right to inspect FirsTime's corporate records and to interfere with Mr. Drueke's ability to communicate with other shareholders before the annual meeting.

64.     The Druekes responded by withdrawing their request for copies of meeting minutes and offered $100 as payment for copies of FirsTime's bylaws and shareholders list. FirsTime provided these materials.

65.     The provision of FirsTime's bylaws in response to the Druekes' inspection demand was the first time the Company provided Mr. Drueke with notice of the onerous bylaws that Defendants secretly adopted in December 2016.

66.     On June 8, 2017, Mr. Drueke wrote to FirsTime's shareholders to inform them about the Company's new bylaws, and to urge them to withhold their votes for the existing directors in the upcoming Board election. Mr. Drueke explained that, while his effort to run an alternate slate of directors had been blocked by the new "secret bylaws prevent[ing] any

-11-

shareholder from offering the shareholders alternative nominees for election at the 2017 Annual Meeting," the shareholders still could "send[] a strong message to Management" by withholding their votes for the four available candidates.

67.     In his June 8 letter, Mr. Drueke further informed the shareholders that "[r]egardless of the voting results at the Annual Meeting, [his] current intent [was] to call for a Special Meeting of Shareholders for the purpose of having the shareholders vote on removing all or some of the Directors and replacing them with persons more attuned to the best interests of all the shareholders."

68.     The next day, June 9, Mr. Bering responded with a letter of his own to FirsTime's shareholders.

69.     In his June 9 letter, Mr. Bering complained of what he called Mr. Drueke's "plan to disrupt further actions of the Company." He also made false representations of fact about Mr. Drueke.

70.     Mr. Bering represented to the shareholders that Mr. Drueke had obtained (and then discussed in a call with Mr. Bering) detailed information about an acquisition FirsTime was exploring before that acquisition was announced to the public. Mr. Bering insinuated that Mr. Drueke had been involved in wrongdoing, telling the shareholders that FirsTime was "investigating how Mr. Drueke became aware of such non-public information."

71.     These representations were false. As Mr. Drueke explained in a June 13 letter responding to Mr. Bering, Mr. Drueke did not know of FirsTime's proposed acquisition before it was publicly announced. Nor had Mr. Drueke claimed otherwise in any call with Mr. Bering. Prior to the announcement, Mr. Drueke knew only that the Board's Capital Allocation Committee had excluded Chairman of the Board Peter Wierenga from a meeting it had flown to.

-12-

Mr. Drueke had complained about that exclusion in a telephone call to Mr. Bering. Mr. Drueke did not then know where the Committee had flown to, who it had gone to see, or what it was going to do. Mr. Bering's June 9 letter to the shareholders misrepresented these facts.

72. On information and belief, Mr. Bering made the misrepresentations in his June 9 letter intentionally, knowing they were false.

73. Mr. Bering made these false representations for the purpose of deterring shareholders from following Mr. Drueke in withholding their votes at the upcoming Board election.

## V. Despite Defendants Efforts to Interfere with the Vote, Approximately Half of FirsTime's Shares Side with Mr. Drueke at the Annual Meeting, and Mr. Drueke Initiates the Process to Call a Special Shareholders Meeting to Remove Defendants from the Board.

74. FirsTime's annual meeting took place on June 20, 2017. The Record Date for the meeting was April 28, 2017, meaning that all the shareholders owning shares as of that date were eligible to vote.

75. Defendants have claimed that 91.63% of the 1,502,119 shares eligible to vote at the meeting were validly represented at the meeting in person or by proxy.

76. Defendants further have claimed that of these shares represented at the meeting, 51.6% voted to elect Mr. Bering and Mr. Bass, 51.4% voted to elect Mr. Cowie, and 47.4% voted to elect Mr. Wierenga. The remainder of the shares withheld their votes for each candidate: 48.4% in the case of Mr. Bering and Mr. Bass, 48.6% in the case of Mr. Cowie, and 52.6% in the case of Mr. Wierenga.

77. Defendants, however, arrived at these calculations by unlawfully counting approximately 100,000 shares. According to the Board's own May 8, 2017 Proxy Statement, any shareholder with stock "held in 'street name' by a broker [or other financial intermediary] . .

-13-

. [could] not vote in person at the annual meeting unless [the shareholder] first obtain[ed] a proxy issued in [the shareholder's] name from [the shareholder's] financial intermediary." Defendants violated this rule by counting votes from approximately 100,000 shares held by a brokerage firm that had not issued a valid proxy to the voter. All of these improperly represented shares were voted in favor of re-electing the four board candidates, including Defendants.

78. Had the improperly represented shares not been counted, none of the four candidates would have received support from a majority of the shares that voted. Rather, a majority of the shares would have withheld their votes for each of the four candidates.

79. Chairman of the Board Peter Wierenga, who held approximately 7.8% of FirsTime's stock, voted "withhold" with respect to the reelection of each of the Defendants.

80. The same day the annual meeting was held, Mr. Drueke took the first step (as required under FirsTime's new bylaws) toward calling a meeting at which the shareholders could vote on whether to remove and replace any members of FirsTime's Board. He did so by formally asking the Board to set a "Demand Record Date" for a special shareholders meeting.

81. Mr. Drueke and, on information and belief, other shareholders dissatisfied with the Defendants acquired additional stock between the April 28 record date for the annual meeting and June 30. On information and belief, given the close vote at the annual meeting, the Defendants understood that these acquisitions made it more likely that the Defendants would be removed as directors at the special meeting that Mr. Drueke had announced he intended to call.

## VI. In the Face of Mr. Drueke's Campaign, Defendants Take Drastic Steps to Entrench Their Control of the Board.

82. Mr. Drueke's strong showing at the annual meeting, coupled with the recent share transactions and support from Chairman of the Board Peter Wierenga, heightened the threat to Defendants' control of the Board.

-14-

83.     Immediately after the annual meeting, therefore, Defendants took two steps to entrench their control of the Board and to impede Mr. Drueke's rights of shareholder franchise: they unlawfully removed Mr. Wierenga from the Board, and then unlawfully authorized the issuance of additional stock and started selling that stock to their friends and supporters in order to dilute the ownership of Mr. Drueke and his supporters.

**A.     Defendants Unlawfully Remove Chairman of the Board Peter Wierenga and Reduce the Board's Size to Three Seats.**

84.     In order to entrench their control of the Board after the annual meeting, Defendants first moved to rid themselves of the Board's dissenting voice: Chairman of the Board Peter Wierenga, who had been a FirsTime director since 2009.

85.     A plurality (47.4%) of the votes cast at FirsTime's annual shareholders meeting had voted to return Mr. Wierenga to the Board.

86.     Under Wis. Stat. § 180.0728(1), Mr. Wierenga was validly elected to serve a new term on FirsTime's Board.  As alleged above, Section 180.0728(1) states that "[u]nless otherwise provided in the articles of incorporation, directors are elected by a plurality of the votes cast by the share entitled to vote in the election at which a quorum is present."

87.     The Board's May 8, 2017 Proxy Statement stated that the directors would "be elected by a plurality of the votes cast at the annual meeting (assuming a quorum is present)."

88.     Between June 20 and 26, however, Defendants removed Mr. Wierenga from the Board.  They also voted to decrease the Board's size from four to three seats.

89.     Defendants apparently have attempted to justify Mr. Wierenga's removal as an application of FirsTime's new bylaw requiring that directors be elected by "a *majority* of the votes cast at any meeting of the shareholders for the election of directors at which a quorum is present . . ." (emphasis added).

QB\132077.00003\46880144.3

90.     But, as alleged above, FirsTime's "majority voting" bylaw violates Wis. Stat.

§ 180.0728, and is unenforceable.

91.     On information and belief, Defendants' true purpose in removing Mr. Wierenga

was to bring the Board under their full control, and to ensure that Mr. Drueke not have the

support of the Chairman of the Board in his impending proxy contest with Defendants.

**B.      Defendants Increase FirsTime's Share Count by Over 30%, Start Selling the New Shares to Their Supporters at a Below-Market Price, and Seek to Use the Sale Proceeds to Repurchase Shares Held by Their Detractors.**

92.     With FirsTime's Chairman of the Board (and longest serving Board member) out

of the way, Defendants immediately moved to step two of their entrenchment plan.

93.     On June 30, only days after removing Mr. Wierenga from the Board, Defendants

announced that they had caused FirsTime to enter into a private placement of up to 521,739

additional shares of common stock at a below market price of $5.75 per share.

94.     That same day, Defendants announced that they had already caused FirsTime to

sell 369,559 of the newly-issued shares at the $5.75 per share below market price.

95.     Before the June 30 issuance and sale, FirsTime had 1,502,119 shares of common

stock outstanding.  The June 30 transactions increased that number to 1,871,678, with another

152,180 shares still available for sale under the private placement.

96.     Prior to the June 30 transactions, the Druekes' holdings constituted more than

10% of the outstanding stock of FirsTime.  As a result of the transactions the Drueke's ownership

has been diluted to less than 10%.

97.     On information and belief, having purported to remove Peter Wierenga from the

Board, Defendants gave Mr. Wierenga no notice of the proposed share issuance.  Nor, on

information and belief, did Mr. Wierenga waive such notice.

-16-

98.     Because Mr. Wierenga in fact is a lawfully elected member of the Board, Defendants' failure to give him notice of the proposed share issuance renders the issuance void.

99.     At the price of $5.75 per share, the sale of 369,559 shares to Defendants' allies brought in approximately $2.1 million to the Company.

100.    The same day they orchestrated this sale of FirsTime stock, however, Defendants authorized FirsTime to use nearly all the proceeds—up to $2 million—to *buy* shares of FirsTime stock "on the open market or in privately negotiated transactions."

101.    At all times since the June 20 annual meeting, the closing open market price of FirsTime stock has been at least $6.00 per share.  In fact, as of June 30, the closing open market price of FirsTime stock was $7.15 per share.

102.    On information and belief, Defendants have been using and intend to use the Company's proceeds from the private placement sale of stock at $5.75 per share to purchase, at a price higher than $5.75 per share, shares owned by shareholders who are likely to vote against them in the next Board election.

103.     The sale-and-repurchase program authorized by Defendants was not intended to serve any legitimate business purpose.

104.    Defendants did not issue and sell 369,559 shares of FirsTime stock to their allies because they determined that FirsTime needed $2.1 million of additional capital.  If capital needs had been the point of the sale, Defendant would not have simultaneously authorized FirsTime to spend $2 million of those proceeds to repurchase shares from other shareholders.

105.    The sole purpose of Defendants' sale-and-repurchase program was to entrench Defendants' control of FirsTime's Board.

-17-

106.    In part, Defendants' sale-and-repurchase program serves this goal by making it more difficult for Mr. Drueke even to demand a special shareholders meeting at which the shareholders may vote on the Board's composition.

107.    Before Defendants issued and sold 369,559 shares of stock on June 30, the Druekes owned or beneficially owned approximately 11.5% of FirsTime's outstanding stock.

108.    Thus, Mr. and Mrs. Drueke had the capacity to demand a special shareholders meeting under Wis. Stat. § 180.0702(1)(b), which requires "[t]he holders of *at least 10 percent* of all the votes entitled to be cast on any issue proposed to be considered at the proposed special meeting [to] sign, date and deliver to the corporation one or more written demands for the meeting describing one or more purposes for which it is to be held." Wis. Stat. § 180.0702(1)(b) (emphasis added).

109.    Immediately after the June 30 issuance and sale, however, the Druekes no longer held 10% of FirsTime's outstanding stock. Their proportionate share of FirsTime's stock had fallen to approximately 9.2%, since Defendants' actions on June 30 had dramatically increased the total number of shares outstanding.

110.    Defendants' sale-and-repurchase program also served their goal of entrenchment by taking control of the Board away from the group of shareholders allied with the Druekes, and giving it instead to a group of shareholders allied with Defendants.

111.    On information and belief, before Defendants caused FirsTime to issue and sell 369,559 new shares on June 30, approximately 50% of FirsTime's shares were held by the Druekes or shareholders who support Mr. Drueke's challenge to Defendants' control of the Board.

-18-

112.     By issuing and selling at least 369,559 new shares—nearly 20% of the total shares now outstanding—to their supporters, Defendants purposefully shifted majority control to a group of shareholders who are allied with Defendants.

113.     Defendants will further strengthen this control if they follow through on their plan to repurchase shares held by shareholders who do not support them.

**VII.     Defendants Continue to Obstruct the Druekes' Efforts to Call a Special Meeting.**

114.     On July 13, 2017, the Druekes made a second written request, pursuant to Wis. Stat. § 180.1602 to inspect certain corporate records.  Specifically, the Druekes requested, among other things, a current list of shareholders, information on who has purchased the stock made available in the private placement announced on June 30, and minutes of all shareholder and Board meetings in the last 24 months.

115.     On July 20, Defendants caused the Company's attorney to respond to this request. That response refused to produce any records unless the Druekes first sign a confidentiality agreement restricting their ability to use or disclose the information and pay $12,000, allegedly to cover "the reasonable costs initially incurred by the Company in producing the Information."

116.     The response further states that even if the Druekes agree to these conditions, the Company will only produce a portion of the information requested.

117.     Specifically, according to the response, under no circumstances is the Company willing to provide the Druekes with more than "[a] list of the registered holders of common stock of the Company . . . showing the name, last known address and number of shares registered in the name of each such holder as of July 10, 2017" and unspecified "[e]xcerpts from all minutes that have been prepared for meetings (for the past 24 months) of the Board of Directors, or any committee thereof, and the 2016 and 2017 annual meetings of the Shareholders."

118.     The Company's response is a violation of Wis. Stat. § 180.1602, and is another

-19-

example of Defendants' abuse of their positions to attempt to entrench themselves, and to use their positions for the primary purpose of interfering with and preventing the effectiveness of a shareholder vote.

## Count One:  Breach of Fiduciary Duty

119.    Plaintiffs restate and incorporate by reference their allegations in the paragraphs above.

120.    As members of the Board of Directors, Defendants owe fiduciary duties to FirsTime's shareholders, including Plaintiffs Paul and Mary Jo Drueke.

121.    Defendants have breached their fiduciary duties to the Druekes by engaging in a course of conduct designed to entrench Defendants' control of FirsTime's Board of Directors, and to deprive the Druekes of their shareholder franchise rights.

122.    Defendants have breached their fiduciary duties to the Druekes by acting for the purpose of depriving the Druekes, and the other FirsTime shareholders aligned with them, of their right to influence FirsTime's management by exercising the most important power that shareholders' wield: the right to elect the representatives who manage the corporation's business and affairs as members of its board of directors.

123.    Defendants have breached their fiduciary duties to the Druekes by acting with the purpose of placing majority control of FirstTime's Board in hands friendly to Defendants.

124.    Among other conduct, Defendants have breached their fiduciary duties to the Druekes by secretly amending FirsTime's bylaws in December 2016, misrepresenting facts in a communication to the shareholders prior to FirstTime's 2017 annual shareholders meeting, unlawfully removing Peter Wierenga from the Board, issuing and selling shares of FirsTime

-20-

stock to their allies, and using the proceeds of that sale to repurchase shares owned by shareholders aligned with the Druekes.

125.   Defendants' breaches have impaired the Druekes' individual rights as shareholders.

126.   Defendants' breaches have caused the Druekes to suffer damages in an amount to be determined at trial.

## Count Two:  Conspiracy To Violate Wis. Stat. § 180.1602

127.   Plaintiffs restate and incorporate by reference their allegations in the paragraphs above.

128.   Defendants have conspired to cause the Company, through its attorney, to violate Wis. Stat. § 180.1602 by failing to produce all the documents requested by plaintiffs and by imposing unreasonable conditions on the production of any documents.

WHEREFORE, Plaintiffs pray for relief as follows:

A.   Judgment invalidating and enjoining enforcement of the "majority vote" bylaw enacted by the Board.

B.   Judgment enjoining enforcement of the bylaw requiring shareholders wishing to nominate an alternate slate of directors to provide all nomination materials nearly four months in advance of a vote.

C.   Judgment enjoining Defendants from interfering with Plaintiffs' right to call a special shareholders meeting, including enjoining Defendants from requiring the establishment of a Record Date and an undertaking to pay the costs of any such meeting.

D.   Judgment invalidating the recent reduction in the size of the Board from four to three, and enjoining Defendants from excluding Peter Wierenga from future Board meetings.

QB\132077.00003\46880144.3

E.      Judgment rescinding the issuance and sale of shares of FirsTime stock pursuant to the private placement announced on June 30, 2017.

F.      In the alternative, judgment enjoining Defendants and FirsTime from counting any votes cast by shares sold pursuant to the private placement in the next election of FirsTime's directors.

G.      Judgment enjoining Defendants and FirsTime from considering the shares issued in the private placement for the purposes of determining whether the Druekes are entitled to demand a special shareholders meeting under Wis. Stat. § 180.0702.

H.      Judgment enjoining Defendants from causing FirsTime to repurchase any shares of FirsTime stock prior to the next election of FirsTime's directors.

I.      Judgment against Defendants in an amount exceeding $75,000.

J.      Judgment awarding all attorneys' fees or costs allowed by law.

K.      All other relief as this Court deems just and proper.

QB\132077.00003\46880144.3

Dated August 1, 2017

QUARLES & BRADY LLP

 s/ Matthew J. Splitek
Donald K. Schott (SBN 1010075)
Matthew J. Splitek (SBN 1045592)
33 East Main Street, Suite 900
Madison, Wisconsin 53703
(608) 251-5000
don.schott@quarles.com
matthew.splitek@quarles.com

Jonathan W. Hackbarth (SBN 1056411)
411 East Wisconsin Avenue, Suite 2400
Milwaukee, Wisconsin 53202
(414) 277-5000
Jon.hackbarth@quarles.com

*Attorneys for Paul and Mary Jo Drueke*

QB\132077.00003\46880144.3