UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**PAUL C. DRUEKE, et al.,**

        **Plaintiffs,**

        **v.**                                 **Case No. 17-CV-1061**

**ANDREW L. BASS, et al.,**

        **Defendants.**

---

## DECISION AND ORDER

---

### INTRODUCTION

On August 1, 2017, Paul C. Drueke and his wife Mary Jo Drueke filed this action against the directors of FirsTime Design Limited, a Wisconsin corporation in which they own stock. (ECF No. 1.) On August 25, 2017, the Druekes filed a motion for a preliminary injunction. (ECF No. 9.) At the same time, the Druekes filed a motion to expedite the briefing and hearing on their motion for a preliminary injunction. (ECF No. 8.)

On September 6, 2017, the court held a telephonic conference to discuss the motion to expedite the briefing and hearing on the Druekes' motion for a preliminary injunction. (ECF No. 25.) After discussion with the parties, the court denied the

Druekes' motion to expedite. The briefing on the motion for a preliminary injunction is now complete and the matter is ready for resolution. All parties have consented to the full jurisdiction of a magistrate judge. (ECF Nos. 7, 20, 24.)

The Druekes ask the court to issue a preliminary injunction that:

1. declares that the Druekes own at least 10 percent of the FirsTime stock for the purpose of calling a special meeting of shareholders under Wis. Stat. § 180.0702;

2. prevents the defendants from requiring the Druekes to pay the costs of any such special shareholder meeting unless the Druekes prevail on each matter voted upon at the meeting;

3. enjoins the defendants from counting recently-issued shares for purposes of any vote at the meeting; and

4. enjoins the defendants against causing FirsTime to repurchase shares during this action.

(ECF No. 11 at 29.)

## FACTS

FirsTime Design Limited is a Wisconsin corporation located in New Berlin, Wisconsin. Plaintiffs Paul and Mary Jo Drueke have been shareholders of FirsTime since 2005. Together they own or beneficially own 172,687 shares. Up until June 30, 2017, FirsTime had issued 1,502,119 shares of common stock, meaning the Druekes owned more than ten percent of the company's common voting stock.

Defendants Andrew Bass, Christopher Bering, and Jeffrey Cowie are the current members of FirsTime's Board of Directors. Bass has been a member of the Board since 2011, and Bering and Cowie have been Board members since 2013. Bering is also

2

FirsTime's CEO. Until June 26, 2017, FirsTime's Board had a fourth member, Peter Wierenga, who was the Board's chairman.

It is apparently undisputed that, although FirsTime experienced financial problems prior to 2012, from 2012 through 2016 it has been profitable. Its share price increased from approximately $1.80 in 2011 to $6.15 as of mid-September 2017.

According to Paul Drueke, sometime in 2015 he became concerned about the direction undertaken by the Board. Although he does not fully describe his concerns, they apparently included his desire that the Board issue substantial dividends to the shareholders. Drueke says he raised his concerns with the Board at the annual FirsTime shareholder meeting held in June 2016. Drueke apparently told the Board that he was considering nominating a slate of alternative director candidates in the future.

In December 2016 the Board amended FirsTime's bylaws in several respects. Relevant here, the amended bylaws required shareholders to submit nomination materials for director candidates further in advance of the annual shareholders' meeting than previously required. (ECF No. 1, ¶¶ 40, 42, 52.) Another change related to shareholders' ability to demand special shareholders meetings. (ECF No. 1, ¶¶ 43-45.) And yet another change required that FirsTime's directors had to be elected by a majority (rather than by a plurality, as set forth in Wis. Stat. § 180.0728(1)) of the votes cast at a shareholders' meeting. (ECF No. 1, ¶¶ 48-52.)

On May 8, 2017, the Board notified FirsTime's shareholders that the annual shareholder meeting would occur on June 20, 2017. On June 6, 2017, Drueke sent a letter to FirsTime shareholders urging them to vote "withhold" for each member of the Board. Drueke also served FirsTime with a demand to inspect certain documents, including the company's bylaws, shareholder list, and minutes of Board meetings addressing certain topics. Defendants responded that they would provide the bylaws, shareholders list, and excerpts of certain meeting minutes after Drueke paid $5,000. When Drueke withdrew his request for copies of meeting minutes and offered $100 for the bylaws and shareholders list, FirsTime produced those documents.

FirsTime's annual meeting took place on June 20, 2017. Bass, Cowie, and Bering all received approximately 52 percent of the votes cast. Wierenga received less than 50 percent of the votes cast. Although the Board's proxy statement stated that any shareholder with stock "held in 'street name'" by a broker could not vote in person at the annual meeting unless the shareholder first obtained a proxy issued in the shareholder's name from his or her financial intermediary, approximately 100,000 shares voted by a shareholder without the required proxy were counted in tallying the votes cast. Had these votes not counted, none of the Board members would have received a majority of the votes cast.

4

The same day as the annual meeting, the Druekes took the first step required under FirsTime's amended bylaws toward calling a special meeting at which the shareholders could vote on removing the company's Board members.

On June 26, 2017, Bass, Cowie, and Bering voted to reduce the Board to three members and immediately removed Wierenga from the Board. In doing so, they relied on the amended bylaws' requirement that directors must be elected by a majority of the votes cast by the shareholders. In opposing the Druekes' motion for a preliminary injunction, Bass, Cowie, and Bering state that their decision to remove Wierenga from the Board was also based on a "concern that Wierenga had been disclosing confidential information to Drueke." (ECF No. 31 at 15).

Also on June 26, 2017, Bass, Cowie, and Bering resolved to issue up to 521,739 of additional FirsTime shares through a private placement and initiate a program allowing FirsTime to repurchase up to $2 million of existing FirsTime stock from its shareholders. As of June 30, 2017, FirsTime sold 369,559 of the newly issued shares "to a number of new and existing shareholders." (ECF No. 31 at 15.) One effect of the issuance of the new stock was to reduce the Druekes' holdings to less than the 10 percent threshold necessary to unilaterally demand a special shareholders meeting.

On July 13, 2017, the Druekes made a second written request to inspect corporate records pursuant to Wis. Stat. § 180.1602. Among other things, they requested a current list of shareholders, information on who purchased the stock made available in the

recent private placement, and minutes of all shareholder and Board meetings in the last 24 months. Bass, Cowie, and Bering responded to the demand by requiring that the Druekes first sign a confidentiality agreement and pay $12,000 to cover the "reasonable costs initially incurred by the Company in producing the Information."

## ANALYSIS

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 1867, 138 L.Ed.2d 162, 167 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). A "preliminary injunction … is often seen as a way to maintain the *status quo* until merits issues can be resolved at trial." *Michigan v. United States Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir. 2011).

> In order to obtain a preliminary injunction, a plaintiff must show three things: (1) without such relief, he will suffer irreparable harm before his claim is finally resolved; (2) he has no adequate remedy at law; and (3) he has some likelihood of success on the merits. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008). If the plaintiff can do that much, the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). In addition, the court must ask whether the preliminary injunction is in the public interest. *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1058 (7th Cir. 2016). This type of relief must not lightly be granted …. *Mazurek*, 520 U.S. at 972.

*Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017).

**Likelihood of success**

"A party moving for preliminary injunctive relief need not demonstrate a likelihood of absolute success on the merits. Instead, he must only show that his chances to succeed on his claims are 'better than negligible.' *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). This is a low threshold. *U.S. Army Corps of Eng'rs*, 667 F.3d at 782." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1046 (7th Cir. 2017).

The Druekes contend that the defendants breached their fiduciary duties to the shareholders when they undertook actions for the improper purpose of entrenching their control of the Board. Specifically, they argue that amending the bylaws, issuing new stock, and repurchasing stock from existing shareholders all were steps taken for the purpose of thwarting the Druekes' expressed desire to attempt to elect new directors.

The defendants, naturally, have a different view. They contend they amended the bylaws "to conform them with modern corporate standards and establish specific procedures for director elections." (ECF No. 31 at 19.) They then issued new stock to raise capital specifically to do what the Druekes were demanding – buy them out as well as the shareholders they introduced to the company.

As set forth above, to demonstrate a reasonable likelihood of success requires only that the Drueke's demonstrate a "better than negligible" chance of prevailing on

7
Case 2:17-cv-01061-WED   Filed 10/13/17   Page 7 of 13   Document 43

the merits of their breach of fiduciary duty claim. At this stage the Druekes have cleared that hurdle. While the defendants have offered justifications for amending the bylaws, issuing new stock, and creating a repurchase program, the timing of those decisions is also consistent with the Druekes' contention that the motive was to thwart Paul Drueke's expressed intention to attempt to elect new directors. Under Wisconsin law, decisions made by directors in power to entrench their positions can be a breach of the directors' fiduciary duty. *Manbourne, Inc. v. Conrad*, 796 F.2d 884, 889-90 (7th Cir. 1986); *Luther v. C.J. Luther Co.*, 118 Wis. 112, 122-23, 94 N.W. 69, 72-73 (1903); *O'Leary v. Bd. of Dirs., Howard Young Med. Ctr., Inc.*, 89 Wis. 2d 156, 167-69, 278 N.W.2d 217, 221-22 (Ct. App. 1979)).

**Irreparable harm**

The Druekes devote little of their briefs to a discussion of irreparable harm. They initially argue that, absent injunctive relief, "the only conceivable outcome is that Defendants will remain in their positions throughout the pendency of this litigation." (ECF No. 11 at 28.) During that time, the defendants "will undoubtedly make countless decisions about FirsTime's stock, property, affairs, and business—decisions that cannot be unwound after the litigation is over." (*Id*.)

In response, the defendants argue that the Druekes "fail to articulate what specific future harm they hope to avert by electing new [directors] and do not identify any concrete actions of the defendants that need to be immediately remedied." (ECF

No. 31 at 19.) Moreover, the Druekes "do not explain how or why that unspecified harm can only be averted if an injunction is granted *now,* as opposed to after a final ruling on the merits." (*Id.*) (emphasis in original.) The inability to point to a concrete and imminent injury to be avoided demonstrates that they are not entitled to a preliminary injunction.

It is obviously true that during the time a lawsuit is pending a corporate board may make decisions that impact shareholders, which decisions likely cannot be undone. But the Druekes have not alleged that the defendants have made decisions that have adversely affected the financial performance of FirsTime or are on the verge of doing so. More importantly, those board decisions that financially injure shareholders are obviously not irreparable. They are likely compensable through money damages.

In their reply brief the Druekes raise a different argument, asserting that "[t]he central harm is that Defendants have prevented them from exercising their fundamental right as shareholders to participate in a fair election to determine who will sit on FirsTime's Board of Directors[,]" which loss of voting power constitutes irreparable injury. (ECF No. 32 at 13.)

"Courts have consistently found that corporate management subjects shareholders to irreparable harm by denying them the right to vote their shares." *Pell v. Kill*, 135 A.3d 764, 793 (Del. Ch. 2016) (quoting *Telcom-SNI Inv'rs, L.L.C. v. Sorrento Networks, Inc.*, 2001 Del. Ch. LEXIS 114, 2001 WL 1117505, at *9 (Del. Ch. Sept. 7, 2001)).

9

Thus, when directors have issued additional stock in an attempt to wrongfully maintain control in the face of stockholder discontent, courts have intervened to thwart such efforts. *See Packer v. Yampol, C.A.*, No. 8432, 1986 Del. Ch. LEXIS 413, at *43 (Ch. Apr. 18, 1986).

The intangible harm of being denied the opportunity to fully exercise their democratic rights as shareholders is a harm for which the Druekes are unlikely to be fully remedied through monetary damages. According to the Druekes, that is the "central harm" they seek to prevent with a preliminary injunction. (ECF No. 32 at 13.) Therefore, the court concludes that the Druekes have sufficiently established that they will suffer irreparable harm if no preliminary injunction is issued.

**Balance of harms**

The court is sensitive to the rights of shareholders in controlling the direction of a corporation. But that concern weighs on both sides. The Druekes seek a preliminary injunction to prevent the dilution of their influence on the corporation. But were the court to grant the preliminary injunction, the shareholders who purchased the stock that the Druekes allege was improperly issued would be prevented from voting those shares. Thus, if the court were to issue the preliminary injunction requested by the Druekes and strip the voting rights attendant the newly issued shares, the consequence would be irreparable harm to the holders of those shares. *See Pell*, 135 A.3d at 793.

The Druekes allege, "but for Defendants' unlawful acts, there is a strong likelihood that Defendants would be removed from FirsTime's Board of Directors, and that a majority of the shares would vote to replace them with a new slate of directors at the special meeting demanded by the Druekes." (ECF No. 11 at 27.) The Druekes seek to install their directors while this litigation proceeds because "[d]uring [the pendency of this litigation], [the directors] will undoubtedly make countless decisions about FirsTime's stock, property, affairs, and business—decisions that cannot be unwound after the litigation is over." (ECF No. 11 at 28.)

Even if it were certain that the Druekes would be able to replace the directors, that, too, cuts both ways. If the court grants a preliminary injunction and the Druekes succeed in replacing the directors, but the Druekes ultimately fail in this lawsuit, what then? Would the court order the defendant directors reinstated? What about decisions made by the new directors in the interim? Would they be nullified? What if the new directors issue a dividend (as the Druekes seek (ECF No. 1, ¶¶ 28, 30))? Will that dividend be clawed back from shareholders, including those who are not a party to this suit? Will the shareholders not allied with the Druekes be compensated for actions the new Board took if any actions were detrimental to their interests?

The risk of irreparable harm to the defendants, the corporation, and the non-party shareholders if a preliminary injunction is issued is no less than the risk of irreparable harm to the Druekes if their motion for a preliminary injunction is denied.

11

Absent a preliminary injunction, the Druekes will suffer a diminution of influence in the corporate democratic process during the pendency of this lawsuit. Although the loss of voting power *per se* is irreparable, many of the effects of this disenfranchisement are remediable through monetary damages.

For the purposes of this motion, the court presumes that the Druekes' likelihood of ultimate success in this action is strong. But even if likely to prevail, the balancing of the harms does not favor the issuance of a preliminary injunction. The court would merely transfer a risk of harm from the Druekes to non-parties. The Druekes have not demonstrated that there is any impending action by the Board that necessitates the extraordinary relief of a preliminary injunction. Rather, it appears simply that the Druekes would prefer to have the best chance for getting different directors in control of the Board sooner rather than later. The preliminary injunction that the Druekes seek is, in large part, an effort to summarily and prematurely obtain the ultimate relief they seek through this lawsuit. *Cf. Harlem Algonquin LLC v. Canadian Funding Corp.*, 742 F. Supp. 2d 957, 962 (N.D. Ill. 2010) ("As the Seventh Circuit has noted, preliminary injunctive relief is not appropriate if it gives to a plaintiff 'the actual advantage which would be obtained in a final decree.'") (quoting *W.A. Mack, Inc. v. General Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958). Consequently, the court concludes that the Druekes' motion for a preliminary injunction must be denied.

**IT IS THEREFORE ORDERED** that Paul C. Drueke and Mary Jo Drueke's Motion for a Preliminary Injunction (ECF No. 9) is **denied**.

Dated at Milwaukee, Wisconsin this 13th day of October, 2017.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge